Jack W. GRIGSBY

v.

**DEPARTMENT OF ENERGY, Secretary of Energy James Edwards and United States of America.**

Civ. A. No. 77–0258.

United States District Court,
W.D. Louisiana,
Shreveport Division.

June 30, 1982.

Marlin Risinger Jr., Blanchard, Walker, O'Quin & Roberts, Shreveport, La., Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for plaintiff.

Joseph Shelby Cage Jr., and Dosite H. Perkins, Asst. U.S. Attys., W.D. La., Shreveport, La., Barbara Ward, Dept. of Justice, Civ. Div., R. Tenney Johnson, Gen. Counsel, Dept. of Energy, Washington, D.C., for defendants.

## OPINION

STAGG, District Judge.

This long-standing controversy is on remand from the Temporary Emergency Court of Appeals ("TECA"). The issue to be decided is narrow and is well-defined in the TECA opinion.[1] After hearing arguments and reviewing the record, this court concludes that that issue must be resolved adversely to the plaintiff.

## BACKGROUND FACTS

This case involves compliance with federal oil pricing regulations. Mr. Grigsby, the plaintiff, is an independent oil and gas operator. He was the operator of the Lucky Strike Well No. 1, which served as the unit well for the Heywood Sand, Reservoir A, Sand Unit B, located in the North Jennings Field. The Louisiana Commissioner of Conservation had created the unit and designated the unit well on February 20, 1969, by Order No. 464–F–1. The unit area resulted from the pooling of five separate leaseholds.

Initially there was a period of substantial production from the Lucky Strike Well. Later, however, the well began to produce excessive salt water. Grigsby then sought permission from the Louisiana Commissioner of Conservation to drill a "substitute unit well". On July 26, 1974, by virtue of Order No. 464–F–2, Grigsby was given permission to drill a well on a different lease in the unit. The "substitute unit well" was named the Robert Leger Well No. 1. The well was spudded on August 4, 1974, and production began on October 14, 1974. During the same month that production began on the Leger Well, plaintiff terminated crude oil production from the Lucky Strike Well. Beginning on October 14, 1974, Grigsby charged upper tier prices for the crude oil from the Leger Well, based on his understanding that the oil could be considered "new oil" under Federal Energy Administration ("FEA") Regulations.

Seventeen months after production began from the Leger Well, plaintiff notified the Commissioner of Conservation of his intent to request an order recognizing two separate reservoirs in the North Jennings Field.[2] In June of 1976 the Commissioner issued two orders acknowledging the existence of two reservoirs in the North Jennings Field. The reservoirs were designated Heywood Sand, Reservoir A, and the Upper Heywood "A" Sand, Reservoir A. The Leger Well No. 1 became the unit well for the Upper

---

1. Upon remand, the *sole issue* before the District Court will be whether the production from the Robert Leger Well No. 1 from October 14, 1974 until June 24, 1976, should be deemed production from the Heywood Sand, Reservoir A, Sand Unit B.
 *Grigsby v. Dept. of Energy,* 585 F.2d 1069, 1086 (Em.App.1978).

2. The initial notice to the Conservation Commissioner of intention to apply for a hearing was issued on March 12, 1976. As noted by TECA in its opinion, Grigsby's notice to the Commissioner was given within three weeks after his receipt of the notice of probable violation issued by the FEA Region VI on February 20, 1976.

Heywood "A" Sand, Reservoir A, Sand Unit B.

On November 29, 1976, the FEA issued a remedial order to Grigsby citing violations of Cost of Living Council Regulations and FEA Price Regulations. The FEA had determined that Grigsby had overcharged customers by billing them at "new oil" prices instead of "old oil" prices since the date production began on the Leger Well. Grigsby was ordered to reduce prices on production from the Leger Well immediately and to refund past overcharges. On December 11, 1976, Grigsby appealed the immediate order to the FEA's Office of Exceptions and Appeals. That remedial order was essentially upheld. Grigsby then appealed the FEA action to the United States District Court. Summary judgment was granted in favor of the FEA, upholding its orders. The court also entered partial summary judgment in favor of the FEA on its counterclaim for civil penalties, and Grigsby was ordered to comply with the remedial order.

An appeal by Grigsby to TECA followed. The facts stated above are those found by TECA on rehearing.[3] TECA recognized that, as of June 24, 1976, production from the Leger Well was considered to be from a separate property and, thus, could be properly classified as "new oil". The question, however, was the status of the Leger Well production from its inception on October 14, 1974, until June 24, 1976. TECA declined to give the 1976 order retroactive application because of "[t]he need for certainty and finality in the enforcement of price control regulations." *Grigsby v. Department of Energy,* 585 F.2d 1069, 1085 (Em. App.1978). Because neither the record nor the briefs clearly established the status of the well during the questionable time period, TECA remanded the case to this court for consideration of the official status of the well during that twenty-month interval.

The parties disagree completely as to what issues are now before this court. Plaintiff contends that the findings and rationale of the remedial orders are subject to review because they were based on erroneous findings of fact. On rehearing, TECA recognized that this court's original entry of summary judgment was rendered upon clearly erroneous findings. The error occurred when the District Court found that the Division of the Heywood Sand into two reservoirs did not create two new properties and, therefore, the Leger Well produced from the same "property" as the Lucky Strike Well. TECA corrected the error when it recognized that the 1976 order did create two separate properties. As stated previously, however, TECA declined to give the 1976 order retroactive application. It is evident, therefore, that the original erroneous finding does not affect the question of status of the Leger Well from 1974 until 1976.

The Department of Energy ("DOE") contends that this court must confine its decision to the sole issue of the status of Leger Well during the period in question. The language used by TECA supports the position taken by DOE. In its conclusion, TECA stated that "[u]pon remand, the *sole issue* before the District Court will be whether the production from the Robert Leger Well No. 1 from October 14, 1974 until June 24, 1976, should be deemed production from the Heywood Sand, Reservoir A, Sand Unit B." *Id.* at 1086 (emphasis added). That language leaves very little room for discussion as to what role this court should now play.

In addition to setting out exactly what issue is to be decided by this court, TECA also suggested guidelines for this court to use in reaching the decision as to the status of the Leger Well. First, it is important to note that the burden is on Grigsby to prove that the Leger Well production was not treated as production from the Heywood Sand, Reservoir A during the period in question. Second, TECA pointed out that this court should direct attention to the fact that the Leger Well was officially designated as the "substitute unit well" for the Heywood Reservoir A, Sand Unit B. Fur-

---

**3.** 585 F.2d 1069, 1080.

thermore, TECA stated that an important area of inquiry would be the method used by Grigsby in apportioning the shares of production from the Leger Well. The opinion states that "[i]f the production from the Robert Leger Well No. 1 were apportioned among the lessees who shared an interest in the Heywood RA SU B, in accordance with the [Order No. 464–F–1] pooling order, then the production should have been classified as 'old oil'." *Id.*

■ The answers given to the questions raised by TECA lead this court to conclude that production from the Leger Well during the period of October 14, 1974 until June 24, 1976, was treated as production from the Heywood Sand, Reservoir A. It is undisputed that the proceeds of production from the Leger Well were apportioned in the same proportions before and after October 1974 among the same interest owners. In other words, those persons who received royalty payments from the Lucky Strike Well continued to receive payments after that well went to salt water and the Leger Well, as the "substitute unit well", began to produce crude oil. The interest owners received payments in the same proportions as those established under the pooling order for the Lucky Strike Well. Under the mandate of the TECA court, this means that the production should have been classified as "old oil".

In a footnote to its opinion, TECA recognized that if the lessees who shared interests in the Lucky Strike Well were operating under a voluntary pooling agreement, then Grigsby would have to prove that the apportionment of production from the Leger Well was done pursuant to the voluntary pooling agreement rather than the compulsory pooling provision set forth in Order No. 464–F–1. Grigsby has acknowledged that the apportionment of Leger Well proceeds was not done pursuant to a voluntary pooling agreement. (Plaintiff's response to interrogatory no. 3.)

Furthermore, TECA put the burden on Grigsby to reconcile his payment of proceeds to the lessees, even assuming the absence of any pooling agreement for the Leger Well, with the "substitute unit well" designation and his claim that the oil from the Leger Well was "new oil". Grigsby has not met his burden. In deposition, he states that one of the reasons for paying royalties on the Leger Well to the same royalty owners of the Lucky Strike Well was that the Leger Well was drilled "as a replacement well on an established unit." (Grigsby deposition, page 15, lines 14–16.)

Grigsby argues that Ruling 1977–1, 42 Feg.Reg. 3628, 3634 (1977) should apply to this case. That ruling provides as follows:

It is not uncommon for less than the total premises subject to a right to produce to be unitized or otherwise aggregated with all or portions of premises subject to other rights to produce, to form a single "property" leaving the balance of the premises formally subject to a single right to produce not aggregated with any such rights. The portion of the premises which is not aggregated is appropriately recognized as a property separate and apart from the portion of the premises which has been aggregated with other rights to produce.

His argument, however, ignores the clear language of TECA. TECA stated that Ruling 1977–1 would control "[i]f the Robert Leger Well No. 1 production had been *officially* recognized *at the outset* as production from outside the Heywood Sand, Reservoir A." It is undisputed that it was some 17 months after production began from the Leger Well that official recognition as production from a separate property was given.

For the reasons stated above, this court finds that the plaintiff has failed to meet his burden to prove that production from the Leger Well was not treated as production from the Lucky Strike Well during the period of October 14, 1974 until June 24, 1976. Therefore, judgment is entered in favor of the government.

■ On July 2, 1981, DOE and the United States moved for remand of this action to DOE for a re-evaluation of its Order of restitution to specific entities. A remand is

requested because of the decontrol of oil prices pursuant to an executive order of President Reagan. Prior to decontrol, DOE controlled the price of oil at every stage of sale and, therefore, could insure that restitution to the first purchaser-refiner would be passed along to the ultimate consumer. DOE alleges that with the advent of decontrol it has no readily available method of insuring that the overcharges are refunded ultimately to the consumer. The agency wants the opportunity to work out a method for restitution.

Grigsby opposes the motion on the basis that if any part of the Remedial Order is to be modified on remand, the Order should be reviewed by the agency *in toto* because it was based on clearly erroneous findings. That argument has been rejected earlier in this opinion. Grigsby also contends that because the purchasers who will benefit from restitution are not parties to this lawsuit this court cannot order modification of an Order that will affect them. He refers to the Economic Stabilization Act of 1970 § 210 (12 U.S.C. § 1904 note) which affords purchasers a private right of action if overcharges exist. Based on that provision, Grigsby contends that he may be subjected to multiple lawsuits. This court notes that there have been no other lawsuits filed against Grigsby. The purchasers have not been necessary parties to this action up to this time, and there is no reason to make them such now. There is no basis for Grigsby's position that if the Order is modified the rights of purchasers will be affected whereas they are not affected as the Order exists now. Modification of the Order will protect the purchasers.

In support of the motion to remand, the defendants rely on two recent cases wherein similar motions to remand were granted. In *Citronelle-Mobile Gathering, Inc., et al. v. James B. Edwards, et al.,* 669 F.2d 717 (Em.App.1982), TECA remanded a remedial order to the district court for an order directing the application to the General Accounting Office Procedures Manual. Restitution payments were to be paid to the United States Treasury and held in a "Deposit Fund Account" to be paid out at DOE's direction under General Accounting. In *Sundance Oil Co., et al. v. DOE, et al.* (U.S.Dist.Ct., Colo., Oct. 29, 1981), the court granted DOE's conditional motion for remand.

This court finds that the motion to remand should be granted, limited to review and modification of the refund provision of the Remedial Order.

### JUDGMENT

For the reasons assigned in the foregoing opinion,

IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the defendant and counterclaimant, and against the plaintiff.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this action be remanded to the Department of Energy for review of the refund provision of the Remedial Order, consistent with the opinion issued this date.